## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**WILBUR CARVISO**,
on his own behalf and on behalf of
a class of similarly situated persons,

Plaintiff,

v.                                                        No. 14-CV-858 JAP/SCY

**CITY OF GALLUP**, and
**ROBERT CRON**, in his individual
and official capacities,

Defendants.

### MEMORANDUM OPINION AND ORDER

This putative class action lawsuit challenges Defendants City of Gallup and Robert

Cron's policy of towing and impounding cars after the driver has been arrested or otherwise

incapacitated. *See* CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF

CIVIL AND CONSTITUTIONAL RIGHTS AND FOR DECLARATORY AND INJUNCTIVE

RELIEF, Doc. No. 1 (Complaint) ¶ 18 (quoting Gallup Police Department Rule 311.00). Plaintiff

Wilbur Carviso alleges police officers employed by Defendants towed his vehicle without

making any effort to identify a responsible party who could take custody of the vehicle in lieu of

impoundment. Plaintiff asserts that the police officers acted under a written policy that violates

the Fourth and Fourteenth Amendments of the United States Constitution.

On December 24, 2014, Defendants filed a MOTION TO DISMISS FOR FAILURE TO

STATE A CLAIM (Doc. No. 6) (Motion to Dismiss). On January 21, 2015, Plaintiff filed a

RESPONSE IN OPPOSITION (Doc. No. 13) (Response). On February 3, 2015, Defendants filed

a REPLY (Doc. No. 14). For the following reasons, the Court will deny the Motion to Dismiss.

## I.      Background

Plaintiff Wilbur Carviso resides in Yah-ta-hey, New Mexico. Complaint ¶ 1. On September 20, 2011, Plaintiff and his friend, Greg Grebb, drove in Plaintiff's car to Gallup to pawn some paintball guns. *Id.* ¶ 8. Plaintiff suffers from frequent seizures as a result of a traumatic brain injury, so is unable (and unlicensed) to drive his car. *Id.* ¶ 9, 14. Grebb was behind the wheel. *Id.* ¶ 9. Grebb parked the car off the road in the store parking lot. *Id.* ¶ 10.

After conducting their business, Plaintiff and Grebb left the store. Outside, they saw Gallup police officers Bowman, Blackgoat, and Martinez standing near Plaintiff's car. *Id.* ¶ 11. The officers explained that they had received a complaint describing a car similar to Plaintiff's speeding and driving erratically before turning into the store's parking lot. *Id.* ¶ 12. Plaintiff and Grebb denied speeding or driving erratically. *Id.* ¶ 13.

The officers asked Grebb and Plaintiff to produce their driver's licenses for inspection. Plaintiff is not a licensed driver, and Grebb did not have his license on his person. The officers told Plaintiff and Grebb that they would not be allowed to drive away without producing a valid license. *Id.* ¶ 14. The officers then arrested Grebb on an unrelated warrant. *Id.* ¶ 15.

The car did not create any traffic hazard or otherwise threaten public safety. *Id.* ¶ 21. Nevertheless, the police officers called a wrecker and had Plaintiff's car towed. Not more than fifteen minutes passed from the call reporting an erratically-driven car and the tow. *Id.* ¶ 16. After his car was towed, Plaintiff walked to the San Juan Center for Independence, a "nonprofit that serves people with traumatic brain injuries, to get a ride home from his life coach." *Id.* ¶ 17.

The wrecker held Plaintiff's car for ten days. *Id.* ¶ 23. The wrecker then sent a notice of a lien to Plaintiff and a company which had loaned Plaintiff money secured by the title to Plaintiff's car. *Id.* ¶¶ 24–25. A national repossession firm arranged for a repossession assignment

of Plaintiff's car. *Id.* ¶ 26. Plaintiff's car was ultimately auctioned by a car dealer in Farmington. *Id.* ¶¶ 28–32.

Plaintiff alleges that the City of Gallup has a policy or practice of towing vehicles whenever the driver or owner of the vehicle has been arrested or is incapable of driving, irrespective of whether the vehicle creates a hazard to public safety. *Id.* ¶ 37.[1] Plaintiff alleges that the City's policy does not provide the owner of a towed vehicle with any opportunity to challenge the legality of the tow. *Id.*

Plaintiff filed this putative class action on behalf of himself and all other similarly situated persons "whose vehicles were caused to be towed at the direction of Gallup Police Department personnel when the driver has been incapacitated, hospitalized, arrested and/or when the vehicle could not be released to a responsible party…." *Id.* ¶ 38. Plaintiff's Complaint seeks compensatory and injunctive relief for constitutional violations under 42 U.S.C. § 1983 and a declaration that the policy is unconstitutional under 28 U.S.C. § 2201. *See* Complaint at 8–10.

Defendants argue that Plaintiff's complaint fails to state a claim for relief and should therefore be dismissed under FED. R. CIV. P. 12(b)(6).

## II.      Standard of Review

The purpose of a motion to dismiss a complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6) is to "test the formal sufficiency of the statement of the claim for relief" in a complaint. 5B Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1356 (West 2004). It is not to "resolv[e] a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Id.* In evaluating a Rule 12(b)(6) motion, this Court accepts all "well-pleaded facts" in the complaint, as distinguished from "conclusory allegations," and views those facts in the light

---

[1] The Gallup Police Department's written policy states: "vehicles will be towed at the direction of Department personnel…when the driver has been incapacitated, hospitalized, arrested, and/or when the vehicle cannot be released to an [sic] responsible party." Complaint ¶ 18 (quoting Gallup Police Department Rule 311.00).

most favorable to the nonmoving party. *Archuleta v. Wagner*, 523 F.3d 1278, 1282–83 (10th Cir. 2008) (quotation and alteration omitted).

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not plead with specificity the facts which give rise to a claim; nonetheless, it must provide a sufficient foundation for concluding that the named defendants had a plausible and not merely conceivable role in the complained-of conduct. *Id.* at 680. In other words, the complaint must do something, however minimal, to "nudge" its claims across the line separating the conceivable from the plausible. *Id.*

### III.    Discussion

Plaintiff's complaint seeks relief for Defendants' alleged violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution, as well as the rights of other persons similarly situated. Plaintiff alleges that the City of Gallup's towing policy is an unreasonable seizure proscribed by the Fourth Amendment. Complaint ¶ 49(a). Plaintiff also alleges that the City's tow policy deprives vehicle owners of their property without due process of law in violation of the Fourteenth Amendment. *Id.* ¶ 49(b).

### A.    Plaintiff's Fourth Amendment Claim

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable…seizures, shall not be violated…." U.S. CONST. AMEND. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Ordinarily, police may not seize personal property without first obtaining a warrant from a neutral and detached magistrate who has found probable cause to conclude that the property is involved in

4

the commission of a crime. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). There are several exceptions to this rule, however. *Id.* Defendants argue that in this case, the so-called "community caretaker" exception to the warrant requirement justifies the tow policy as a matter of law.

    1.   The "community caretaker" exception to the warrant requirement

    In *Cady v. Dombrowski*, the United States Supreme Court held that the Fourth Amendment permits police officers to seize vehicles without a warrant when performing "community caretaking" functions under standard police department policies. 413 U.S. 433, 441 (1973). The exception was crafted in recognition of two facts: First, whereas federal law enforcement officers are primarily engaged in the detection and investigation of crimes, local police officers "frequently investigate vehicle accidents in which there is no claim of criminal liability…." *Id.* Second, citizens have a greatly diminished expectation of privacy in their vehicles, given their mobility and the fact that their contents are often in plain view to the public. *Id.* at 441–42.

    Evaluating the constitutionality of Defendants' impound policy is difficult given the procedural posture of this civil case. Most courts applying the community caretaking exception do so in the context of a motion to suppress in a criminal case. Thus, a particular police department policy is challenged only as it applies to a very specific set of facts. Moreover, any appellate review of the trial court's decision has the benefit of extensive findings of fact. *See* Fed. R. Crim. P. 12(d); *United States v. Castillo-Garcia*, 117 F.3d 1179, 1186 (10th Cir. 1997) ("On appeal from a motion to suppress evidence…we accept the district court's factual findings unless clearly erroneous, review questions of law *de novo,* and view the evidence in the light most favorable to the prevailing party.").

And unlike a motion to suppress, where the government has the burden of proving that an exception to the warrant requirement applies, the plaintiff in a § 1983 case has the burden at trial of proving that a warrant exception does not apply. *Copar Pumice Co., Inc. v. Morris*, No. CIV 07-0079, 2009 WL 2431981 at *3 (D.N.M. July 8, 2009). If Plaintiff's complaint sought to invalidate Defendant's towing policy as facially unconstitutional, the Court's task would be more straightforward: see whether Defendants' towing policy on its own terms requires unconstitutional impounds. But Plaintiff's complaint alleges that the policy is unconstitutional not because of its text, but because Defendants have interpreted it in a way that allows a vehicle to be towed "regardless of whether the vehicle creates a public safety hazard as parked and without providing notice or hearing." Complaint ¶ 37.

2. Plaintiff has made sufficient allegations that the police officers violated his Fourth Amendment rights by towing his vehicle in the absence of any public safety concerns.

Plaintiff argues that two factual assertions alleged in his Complaint prevent the "community caretaker" exception from applying to his claims. First, Plaintiff has alleged that there were no public safety concerns that would justify towing the car because it was legally parked off the street and the owner of the parking lot where Plaintiff's car was parked did not request a tow. *See* Complaint ¶ 21. Second, Plaintiff has alleged that only 15 minutes separate the initial complaint of erratic driving and the officers' decision to impound the vehicle. Complaint ¶ 16. Plaintiff argues this fact shows that the officers willfully refused to allow Plaintiff an opportunity to find another responsible party to take custody of the vehicle. *See* Complaint ¶ 22; Response at 7 ("It was unreasonable for the police to tow Plaintiff's car because Plaintiff was present to take responsibility for the car."). In other words, Plaintiff asserts that police officers have a duty under the Fourth Amendment to make an inquiry into whether there

are less drastic means of protecting the public from the nuisances caused by temporarily unattended or abandoned cars before towing them.

Insofar as Plaintiff asserts that a police officer may not impound a vehicle when the arrestee can "provide for the speedy and efficient removal of the car from public thoroughfares or parking lots[,]" the Court agrees. *United States v. Duguay*, 93 F.3d 356, 353 (7th Cir. 1996). And courts have concluded that "speedy and efficient removal" includes situations where there is a responsible third party on the scene ready to take custody of the vehicle. *Id.*; *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir. 1992); *United States v. Pappas*, 735 F.2d 1232, 1234 (10th Cir. 1984).

But Plaintiff does not assert that Defendants violated his Fourth Amendment rights because there was someone at the scene who could have legally taken custody of the car and driven it away after Grebb's arrest.[2] Instead, Plaintiff contends that Defendants violated his Fourth Amendment rights by either (1) refusing to allow Plaintiff time to find a responsible person to take custody of the car; or (2) not simply leaving the car where it was, parked legally in a private parking lot. The Court will address each contention in turn.

   a.   Police officers' failure to allow Plaintiff time to find a responsible person to take custody of the car

Plaintiff argues that the Fourth Amendment required the police officers in this case to "[a]t the very least…afford[] Plaintiff sufficient time to make arrangements for the vehicle to be moved before ordering the tow…." Response at 8. It is plausible to infer from Plaintiff's

---

[2] Plaintiff argues that "there is absolutely no reason why the officers could not have left the car in Plaintiff's custody and control for him to determine how to remove the car from the parking lot." Response at 8. This assertion is implausible in light of the facts alleged in the complaint: Plaintiff was unlicensed, and more importantly, physically unable to drive. The officers could have reasonably refused to release custody of the vehicle to the Plaintiff in this situation. As Defendants point out, the officers could have exposed themselves to civil liability if Plaintiff drove away and caused an accident. *See* Reply at 6 (citing *California First Bank v. State*, 801 P.2d 646, 657, 111 N.M. 64, 75 (N.M. 1990)).

Complaint that the police officers did not give Plaintiff any time to avoid having his vehicle towed: only fifteen minutes elapsed between the time someone reported that Grebb was driving erratically and when officers called for a tow of Plaintiff's vehicle. Complaint ¶ 16. After the vehicle was towed, Plaintiff walked to the San Juan Center for Independence to get a ride home from his life coach. *Id.* ¶ 17. Plaintiff argues that he could have easily had his life coach or someone else from the Center for Independence return to the parking lot and retrieve his vehicle, "making the tow unnecessary." Response at 8–9.

The problem with this argument is that it conflates necessity with reasonableness, and "the ultimate touchstone of the Fourth Amendment is reasonableness[,]" not necessity. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quotation marks and citation omitted). While under the factual allegations in Plaintiff's complaint it would have been reasonable for the police officers to give Plaintiff some time to make alternative arrangements, this does not *ipso facto* make a decision not to do so *un*reasonable. True, if the officers had afforded Plaintiff some time to find a responsible third party and Plaintiff had done so, there would have been no need to tow Plaintiff's vehicle, and hence no need for Plaintiff to go through his subsequent ordeal. But the question is not whether subsequent events render the police officers' initial decision to tow unreasonable; it is whether the officers' decision to tow was a reasonable exercise of community caretaking functions at the time the car was towed. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

In other words, whether Plaintiff's complaint has made out a claim for violations of the Fourth Amendment does not depend on whether a reasonable officer would have given Plaintiff time to find a friend to come get his car. It depends on whether it was *unreasonable* to withhold that opportunity.

Plaintiff offers *Price v. City of Seattle*, No. C03-1365P, 2005 WL 1189585 (W.D. Wash. Mar 1, 2005), and *United States v. Goodrich*, 183 F.Supp.2d 135 (D. Mass. 2001), in support of his claim that the officers were unreasonable as a matter of law. But these cases are factually distinguishable. *Price* concerned the City of Seattle's policy requiring officers to tow arrestees' vehicles based on charged crime, and nothing more: the policy gave police officers no discretionary power to release a driver's vehicle to a responsible third party. *Price*, 2005 WL 1189585 at *4. The City's policy at issue in this case is readily distinguishable from the City of Seattle's policy at issue in *Price*. It does not require a car to be towed based on an arbitrary distinction between tow-worthy and non-tow-worthy offenses. Instead, it calls for a vehicle to be towed when the driver is arrested or incapacitated. Even then, the City's policy gives officers the discretion not to impound a vehicle if there are responsible third parties who can take custody of the vehicle instead.

*Goodrich* concerned an impound and subsequent inventory search of the defendant's car during an armed robbery investigation. The Court held that it was unreasonable for police officers to impound the car after arresting the defendant when "the police had reason to believe that someone was available who could be entrusted with the car." *Goodrich*, 183 F.Supp.2d at 139. But in *Goodrich*, the defendant's wife was present when he was arrested and when the car was towed. She was never told that she could take custody of make alternate arrangements for the car. *Id.* The Court held that the circumstances of the impound and the police officers' testimony at the suppression hearing demonstrated that the impound did not arise from valid community caretaking concerns but from an "understandable but unconstitutionally satisfied desire to obtain evidence." *Id.* at 144.

Plaintiff does not allege that his car was impounded because the police officers were seeking a pretext to perform an inventory search of his vehicle. The fact that Plaintiff was not arrested undermines this possible explanation for the tow. On its facts, *Goodrich* simply reiterates a staid proposition that police officers may not impound a vehicle when a responsible party is *present* to take custody of the vehicle. Because Plaintiff has not alleged that there was a responsible party *present* who could take custody of the vehicle, Plaintiff cannot obtain relief under the Fourth Amendment on this basis.

b.   Police officers' decision not to leave the car in the pawn store parking lot

Plaintiff's complaint alleges that the police officers' decision to impound his vehicle was unreasonable because "[t]he owner of the private property where Plaintiff's car was legally parked did not request a tow[,] [t]he car was not abandoned or stolen[,] [and as] parked, the car did not create any impediment to traffic, hazard to other drivers, or threat to public safety." Complaint ¶ 21. Defendants argue that Plaintiff has failed to state a claim for relief under the Fourth Amendment on this basis because even generalized concerns about theft or vandalism are sufficient to justify impoundment. Motion to Dismiss at 6. Defendants point to *Hackett v. Artesia Police Dept.*, 379 Fed.App'x. 789 (10th Cir. 2010) and *United States v. Kornegay*, 885 F.2d 713 (10th Cir. 1989) in support of this conclusion.

In *Hackett*, the Tenth Circuit Court of Appeals upheld a grant of summary judgment in favor of the police officer defendants on the plaintiff's § 1983 claims. In relevant part, the Court held that "[u]nder the community caretaking doctrine, concerns about theft or vandalism are sufficient to justify impoundment." *Hackett*, 379 Fed.App'x at 793 (citing *Kornegay*, 885 F.2d at 716). In *Kornegay*, the Tenth Circuit upheld the impoundment of a vehicle when it was legally parked off of a public road and left unattended, holding that the potential for vandalism or theft

was sufficient to trigger the community caretaker exception. *See* 885 F.2d at 716 (towing justified because leaving a vehicle in a public parking lot "could have subjected it to vandalism or theft." (emphasis added)).

*Hackett* and *Kornegay* can be read to afford a great deal of deference to police officers' decisions to tow arrestees' vehicles. But *Hackett* was decided on appeal from a grant of summary judgment and *Kornegay* from a denial of a motion to suppress. In both cases, the trial court's decision was supported by an extensive evidentiary record. And in *Kornegay*, the Court viewed the facts in the light most favorable to the government as the prevailing party. *See United States v. Madrid*, 713 F.3d 1251, 1255 (10th Cir. 2013) ("In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and review the district court's factual findings for clear error." (quotation, alteration omitted)). In order for this argument to succeed at the Rule 12(b)(6) stage, the Court would need to conclude that the threat of vandalism or theft in general can justify an impound, even in the absence of any evidence of such a danger.

Neither *Hackett* nor *Kornegay* stand for this proposition. *Hackett*, as stated above, affirmed the district court's grant of summary judgment which was based in part on interrogatory answers and affidavits from police officers stating that public safety concerns motivated their decision to impound the plaintiff's vehicle. *See Hackett v. City of Artesia Police Dept. et al.*, No. CIV 08-306, ECF Doc. No. 112-13 at 3 (Artesia Police Dept. Officer Pedro Quinones' Response to Plaintiffs' First Set of Interrogatories) ("Officer Quinones impounded the vehicle as a matter of public safety…").

The Court is unable to discern from the *Kornegay* opinion itself whether the Court of Appeals' statement that "vandalism or theft" could also justify impoundment was based on

findings of fact by the trial court. But it is hard to read *Kornegay* to mean that such concerns can justify an impound even in the absence of any supporting evidence. This would essentially overrule other cases upholding a district court's suppression of evidence based on a finding that there were no applicable public safety concerns that would justify the impound. *See*, *e.g.*, *Pappas*, 725 F.3d at 1234.

The Court concludes that Plaintiff has made a claim under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights. According to the allegations in the Complaint, police officers employed by Defendants ordered Plaintiff's car towed in the absence of any concerns that the car presented any risk to public safety. It was legally parked in a private lot. The police officers could have taken the keys from Plaintiff and given them back when he returned with a responsible third party. They could have given Plaintiff a ride to the Center for Independence and let his life coach pick up the car on Plaintiff's behalf. In other words, there were any number of other, less intrusive alternatives to seizing the vehicle after Grebb was arrested. The police officers' decision to take the most drastic course of action, in the absence of any public safety justification, is sufficient to make out a claim for unreasonable seizure under the Fourth Amendment.

None of this is to say that the police officers were obliged to take any one particular course of action. After discovery, it may prove that the police officers' decision to tow Plaintiff's vehicle was reasonable under the circumstances. As Defendants point out, allowing Plaintiff to drive away with the vehicle would have likely been unreasonable given Plaintiff's health problems and lack of a driving license. But Plaintiff is not alleging that the officers should have allowed him to drive away or that he would have driven the car away had the police officers left it in his possession. Instead, Plaintiff's claim is based on the officers' decision to tow the vehicle

in the complete absence of any public safety justification. For these reasons, the Court will deny Defendant's Motion to Dismiss as to Plaintiff's claim under the Fourth Amendment.

    B.  <u>Plaintiff's Fourteenth Amendment claim</u>

"[No] state [may] deprive any person of life, liberty, or property, without due process of law…." U.S. Const. Amend. XIV § 1. Plaintiff alleges that Defendants' tow policy deprived him of his vehicle without due process of law because the policy "provides no notice requirements or processes by which the legality of a tow may be challenged." Complaint ¶ 19. Plaintiff alleges that the police officers who ordered his car towed were acting under this policy and likewise failed to give him notice of any right to request a hearing or "otherwise contest the legality of the tow." Complaint ¶¶ 20, 22.

Defendants reply by arguing Plaintiff is simply repackaging his Fourth Amendment claim as a Fourteenth Amendment claim by saying his injuries arise from not being afforded notice and an opportunity to be heard about the tow rather than the tow itself. *See* Reply at 3–4. But just because Defendants' actions may give rise to claims for violations of one constitutional right does not foreclose any other potential claims. For example, if Defendants had Plaintiff arrested for lawfully picketing in front of town hall and had a department policy of excessive force, such as using a cattle prod on arrestees, Plaintiff would have a claim under both the First and Fourth Amendments. Simply because both claims arise from the same transaction does not mean Plaintiff is required to seek relief under one theory and not the other.

Defendants cite *Graham v. Connor*, 490 U.S. 386 (1989) and *Albright v. Oliver*, 510 U.S. 266 (1994) in support of their argument, but both cases are inapposite. *Graham*, as Defendants point out, says that "[t]he validity of the [constitutional] claim must…be judged by reference to the specific constitutional standard that governs that right…." *Graham*, 490 U.S. at 394. But

*Graham* states that an excessive force claim does not arise from a substantive right distinct from the Fourth Amendment right to freedom from unreasonable searches and seizures and the Eighth Amendment's right to freedom from cruel and unusual punishment. *Id. Graham* cannot be read to require courts to apply an unguided analysis into what substantive rights a Complaint's factual allegations support.

So too with *Albright*. There, the Court refused to recognize a substantive due process right to freedom from criminal prosecution "except upon probable cause." *Albright*, 510 U.S. at 270. But if Plaintiff's complaint fails to state a claim for relief under the Fourteenth Amendment and is therefore subject to dismissal under Rule 12(b)(6), it is not because Plaintiff seeks relief for violations of a right that does not exist. If the Complaint fails to state a claim, it is because its factual allegations do not give rise to a claim for violations of Plaintiff's right to procedural due process.

Turning to that  right, the Tenth Circuit has held that "vehicle impoundment…prior to any hearing may be appropriate *provided* the aggrieved party is afforded adequate notice of a post-deprivation hearing in which the validity of the impoundment can be disputed, either directly or by way of a challenge to the underlying violation…." *Summers v. State of Utah*, 927 F.2d 1165, 1169 (10th Cir. 1991) (emphasis original). And vehicle owners may be required to pay impound fees as a kind of bond in order to recover the vehicle before an adjudication of the impoundment's lawfulness. *Goichman v. City of Aspen*, 859 F.2d 1466, 1468 (10th Cir. 1988). But the government is still required to provide a forum to contest the impound and return the car as well as any fees if the impound is found unlawful. *Summers*, 927 F.2d at 1169.

Plaintiff's complaint more than adequately alleges a violation of his right to procedural due process under the Fourteenth Amendment. Plaintiff alleges that Defendants have no process

for challenging the legality of a tow. Defendants reply that because Plaintiff takes issue with only one provision of Defendants' towing policy—that is, tows after the driver has become arrested or incapacitated—the Fourteenth Amendment does not apply. Reply at 3. But this just begs the question of whether the provision deprived Plaintiff of his property without due process of law. If Plaintiff was the one arrested, presumably he would be able to challenge the legality of the tow in the same forum that would address the legality of his arrest. *Summers*, 927 F.2d at 1169. But because Plaintiff was never arrested, he had no way to challenge the violation that gave rise to the tow. *Id.* And because Plaintiff's Complaint alleges Defendants provide no other means to challenge a tow, *see* Complaint ¶ 19, it makes out a plausible claim that Defendants deprived him of his vehicle without due process. Accordingly, the Court will also deny Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim.

**CONCLUSION**

Plaintiff's Complaint sets forth plausible allegations of fact that are sufficient to state claims for relief under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights. IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is DENIED.

_____

SENIOR UNITED STATES DISTRICT JUDGE